UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| United States of America | |
| v. | Report and Recommendation and Decision and Order |
| Wilbert Hayes, | 15-CR-29A |
| Defendant. | |

---

## I.     INTRODUCTION

The Hon. Richard J. Arcara has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 16.)  Pending before the Court are omnibus non-dispositive and dispositive motions filed by defendant Wilbert Hayes ("Hayes").  (Dkt. No. 21.)  The Court held oral argument on September 22, 2015 and a suppression hearing on February 25, 2016.  The Court now issues its decisions for the non-dispositive motions and its recommendations for the dispositive motions, as explained in the appropriate subsections below.

## II.    BACKGROUND

This case concerns a fairly straightforward accusation that Hayes was a felon in possession of a firearm.  The case began with a pre-indictment complaint that this Court signed on January 29, 2015.  (Dkt. No. 1.)  In the complaint, the Government explained that Niagara Falls police officers had obtained a search warrant from Niagara Falls City Court for 1318 Walnut Avenue, Upper, Niagara Falls, New York ("Walnut Avenue").  Police officers believed at the time that

Hayes lived at Walnut Avenue. Police officers executed the search warrant on August 15, 2014. Hayes was taken into custody and read his *Miranda* rights. Police officers then searched Walnut Avenue and found an operational J.C. Higgins 12-gauge bolt action shotgun. The complaint did not say so explicitly but implied that police officers believed that the shotgun belonged to Hayes. The discovery of the shotgun prompted police officers to run a criminal background check on Hayes. The background check turned up two prior state felony convictions. On September 14, 2009, Hayes was convicted of attempted assault in the second degree, a Class E felony and a violation of N.Y. Penal Law § 120.05. On February 8, 2006, Hayes was sentenced for criminal possession of a controlled substance in the fifth degree, a Class D felony and a violation of N.Y. Penal Law § 220.06.

  The Court held an initial appearance on February 2, 2015. Following a detention hearing, the Court ordered Hayes detained on February 10, 2015. The Government filed a one-count indictment on February 11, 2015. (Dkt. No. 14.) In the indictment, the Government accused Hayes of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment also contained a forfeiture notice for the shotgun found at Walnut Avenue.

  Hayes filed his omnibus pretrial motions on August 4, 2015. With respect to non-dispositive requests, Hayes seeks production of *Brady*, *Jencks*, and *Giglio* material. Hayes seeks production of materials under Rules 12 and 16 of the Federal Rules of Criminal Procedure. Hayes also wants disclosures including the identity of informants; proposed evidence that might be admissible under Rules 404(b), 609, and 807 of the Federal Rules of Evidence ("FRE"); a Bill

of Particulars; and preservation of agent notes and reports. The Government responds that it is aware of its obligations under FRE 404(b), 609, and 807, and under *Brady*, *Jencks*, and *Giglio*; and that it will furnish the necessary materials in accordance with any eventual trial order. The Government contends that Hayes has not shown how the identity of the confidential informant involved with the search warrant application is essential to his defense. The Government asserts that it has fulfilled its obligations under Rules 12 and 16. The Government opposes production of a Bill of Particulars because Hayes has not demonstrated why further particularization is necessary. The Government already has committed to preservation of evidence including agent notes and reports.

With respect to dispositive requests, Hayes has challenged the propriety of the Niagara Falls City Court search warrant for Walnut Avenue and has moved to suppress any statements or physical evidence stemming from its execution. Hayes considers the search warrant defective because it relied too much on information proffered by law enforcement agents without proper scrutiny of a confidential informant on whom the agents relied. The judge who issued the search warrant, according to Hayes, never had a chance to assess the totality of the circumstances. From here, Hayes argues that if the search warrant had been defective then any evidence obtained through its execution must be suppressed. As for the shotgun that police officers found at Walnut Avenue, Hayes "asserts that he did not own or exercise dominion or control over the shotgun seized."[1] (Dkt. No. 21 at 24.) The Government responds that the confidential informant

---

[1] At one point, the parties had made arguments about whether Hayes had standing to challenge the search of Walnut Avenue. (*See generally* Dkt. No. 21 at 23–25; Dkt. No. 22 at 14–15; Dkt. No. 26.) The issue of standing was sufficiently resolved that the parties did not raise it in their post-hearing briefing.

mentioned during the search warrant application had a reliable history of cooperation with law enforcement agents. The confidential informant also engaged in controlled purchases from Hayes at Walnut Avenue. Combined with the agents' surveillance of Walnut Avenue, all of this information supported probable cause to issue the warrant. In the alternative, according to the Government, even if some problem existed with the search warrant, the police officers acted reasonably and in good faith when they relied on it.

As part of its preparation for this Report and Recommendation, the Court reviewed both the search warrant and the sealed transcript of the search warrant application that occurred in Niagara Falls City Court. The search warrant authorized a search of Hayes's person and of the entirety of Walnut Avenue for marijuana and any related paraphernalia. The affidavit in support of the search warrant mentioned the confidential informant's past reliability and the informant's knowledge of drug transactions occurring at Walnut Avenue. The affidavit explained in detail two controlled purchases that occurred with Hayes at Walnut Avenue in July and August 2014. The sealed transcript revealed that the confidential informant was present with law enforcement agents when they applied for the search warrant. Apart from the agents' assertions of reliability, the judge made his own determination that the confidential informant "is known to this Court for–from prior warrants that did reveal arrests, convictions and contraband." (Dkt. No. 29 at 2.) The judge then engaged in a colloquy with the confidential informant that covered how the informant knew Hayes and how Hayes discussed his ability to obtain drugs. The confidential informant mentioned a history of purchasing drugs from Hayes even before the controlled purchases. The confidential informant then reviewed how the controlled purchases proceeded,

and the agents described how field tests yielded positive results for marijuana. Finally, the confidential informant mentioned seeing "a sawed off 30-06" (*id.* at 9) that belonged to Hayes and hearing from Hayes that Hayes had other guns.

The following information emerged from the suppression hearing that the Court held on February 25, 2016. When police officers executed the search warrant, they conducted a "dynamic entry"—"[t]hey secured the residence and all occupants of the residence. By securing they place everybody in handcuffs. And once the premises is secured and all occupants are secured for officer safety, they let us know—the Narcotics Intelligence Division—that it's safe to come in and set up—continue with our investigation." (Dkt. No. 39 at 7.) Hayes was seized in this fashion and, according to the police officers, advised of his *Miranda* rights prophylactically. (*Id.* at 9.) Police officers also seized Jenna Simone ("Simone"), Hayes's fiancee and mother of their two children.[2] Each room of Walnut Avenue then was assigned to a different police officer and searched. The shotgun mentioned in the complaint and indictment was found in a west bedroom closet together with a small quantity of potential contraband. (*Id.* at 10–11.) The west bedroom possibly was the bedroom where the children slept, though Simone testified that it was her bedroom. (*Compare id.* at 54 *with id.* at 73–74.) The other potential contraband eventually tested positive for marijuana and ecstasy. (*Id.* at 12.) Another quantity of marijuana was found in an empty fish tank elsewhere in the house, possibly on a shelf in Simone's bedroom closet. (*Id.* at 43, 62.) No contraband was found on Hayes's person. (*Id.*) The shotgun and contraband found in the west bedroom

---

[2] Incidentally, Simone denies the police officers' assertion that Hayes received prophylactic *Miranda* rights. (*Id.* at 56.) Since the Government has stipulated that Hayes made no statements during the course of events at Walnut Avenue, resolving this factual contention is unnecessary.

prompted Hayes's formal arrest.  Hayes made no statements during the seizure, the search, and the formal arrest.  (*See id.* at 35.)  Simone claimed toward the end of the search that the shotgun was hers and that she inherited it from her mother.  (*See id.* at 32, 37, 60–61.)  None of the police officers appears to have questioned Simone about her assertion.  Simone also claimed at the hearing that the marijuana found at the house was hers.  (*Id.* at 64–65.)  When Hayes himself testified, he denied any knowledge of a shotgun or marijuana at Walnut Avenue.  (*Id.* at 79.)  Hayes also denied hearing any *Miranda* warnings.  (*Id.* at 82.)

III.   DISCUSSION

Hayes has filed a variety of non-dispositive pretrial discovery motions.  "Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters.  For example, under the Fifth Amendment's Due Process Clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment.  In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500."  *U.S. v. Hong*, 545 F. Supp. 2d 281, 284 (W.D.N.Y. 2008).  With these general principles in mind, the Court will assess each of Hayes's discovery motions.

   A.   *Motion for* Brady / Jencks / Giglio *material (non-dispositive)*

Hayes seeks the disclosure of all potentially exculpatory materials, including information to be used for the impeachment of the Government's witnesses, as required under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  *Brady* material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or

punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness." *U.S. v. Kiszewski*, 877 F.2d 210 (2d Cir. 1989). Hayes also seeks disclosure of the statements of witnesses under the Jencks Act (18 U.S.C. § 3500).

The Government has acknowledged its obligations under *Brady* and *Giglio v. U.S.*, 405 U.S. 150 (1972), as well as the Jencks Act. The Government represents that it will provide this material as directed in the District Court's trial order.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie *Brady* mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined *Brady*/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." *U.S. v. Percevault*, 490 F.2d 126 (2d Cir. 1974); *U.S. v. Green*, 144 F.R.D. 631 (W.D.N.Y. 1992).

Here, the Court concludes that disclosure of such inculpatory and impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information

at trial) is sufficient. The Court's conclusion includes Hayes's separate request for a search of Government personnel files for any *Brady* or *Giglio* material.

**B.     Motion for identity of informants (non-dispositive)**

Hayes seeks an order requiring disclosure of information pertaining to informants who may have been involved in this case. The Government is not required to furnish the identities of informants unless it is essential to the defense. *Raver v. U.S.*, 353 U.S. 52, 60–61 (1957); *U.S. v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988). Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial. *U.S. v. Bejaia*, 904 F.2d 137, 139 (2d. Cir. 1990). Hayes has not established that the pre-trial disclosure of the identities of any informants is essential to his defense. The Court thus denies the request.

**C.     Motion for disclosure of FRE 404(b), 609, and 807 evidence (non-dispositive)**

Hayes also seeks information under FRE 404(b), 609, and 807. FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief. FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government shall produce all FRE 404(b) evidence as directed by the District Court in the trial order.

With respect to Hayes's requests under FRE 609 and 807, the only notice requirement imposed by either Rule applies closer to trial. FRE 609(b) mandates that "the proponent [give] to the adverse party sufficient advance written notice of intent to use such evidence to provide the

adverse party with a fair opportunity to contest the use of such evidence." FRE 807(b) similarly states that proposed evidence under that rule "is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." To the extent that the Government intends to use at trial evidence falling under these rules, it must give reasonable notice as directed by the District Court in the trial order.

### D. *Motion for Rule 16 discovery / notice under Rule 12 (non-dispositive)*

Pursuant to Rule 12(b), Hayes has requested that the Government give notice of its intention to use at trial certain categories of evidence that would be discoverable under Rule 16, to give him an opportunity to move to suppress under Rule 12(b)(3)(C). To the extent that the Government has not already done so, the Government is directed to provide either notice to Hayes as requested or notice of any objections to the requests.

Hayes also has requested production of statements, tangible items, reports, and other information under Rule 16. The extent that it has not already done so, the Government is directed either to produce or to make available for inspection the items that Hayes has specified, in accordance with Rule 16.

### E. *Motion for Bill of Particulars (non-dispositive)*

Hayes has moved for a Bill of Particulars. Rule 7(f) of the Federal Rules of Criminal Procedure allows the Court to direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. *U.S. v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)

9

(citations omitted). "The important question is whether the information sought is necessary, not whether it is helpful. It is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." *U.S. v. LaMorte*, 744 F. Supp. 573, 577 (S.D.N.Y. 1990) (citations omitted). Upon review of the Indictment and the Government's response to the omnibus motions, the Court finds that Hayes is not entitled to a Bill of Particulars inasmuch as he is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect him from double jeopardy.

> F.  *Motion for preservation of agent notes and reports (non-dispositive)*

Hayes seeks an order directing the Government to preserve rough notes and other evidence taken by any law enforcement agents involved in the case. The Government does not oppose the request for preservation in itself, though it argues that the request might cover material that may not be Jencks material and that might exceed its obligations for disclosure. In the event that issues arise at trial that require review of the items that Hayes has mentioned, the Government is directed to preserve rough notes and evidence taken, subject to further instructions from the trial judge.

> G.  *Motion to challenge search warrant issued for 1318 Walnut Avenue, Upper, Niagara Falls, New York (dispositive)*

Next, the Court will review Hayes's challenge to the sufficiency of the search warrant issued from Niagara Falls City Court. "A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant." *U.S. v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks

and citation omitted). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]o suppress evidence obtained through the use of an allegedly insufficient search warrant, a defendant must prove that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding." *U.S. v. Soto*, 52 Fed. Appx. 534, 535 (2d Cir. 2002) (summary order) (citation omitted).

Here, probable cause existed for the Niagara Falls City Court judge to issue the search warrant for Walnut Avenue. Law enforcement agents presented information through their affidavit that included the confidential informant's reliability and the results of two controlled purchases. *Cf. U.S. v. Canfield*, 212 F.3d 713, 719 (2d Cir. 2000) (upholding a search warrant where, *inter alia*, a confidential informant had first-hand knowledge of the criminal activity in question). Additionally, the agents brought the confidential informant with them when presenting the search warrant application. The judge already knew from prior interactions that the confidential informant was reliable. The judge also would have been able to assess the confidential informant's credibility face-to-face. *Cf. U.S. v. Salazar*, 945 F.2d 47, 50–51 (2d Cir. 1991) ("[A] face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false."); *U.S. v. Glover*, No. 09 CR 381A, 2010 WL 3608045, at *6

(W.D.N.Y. Sept. 10, 2010) (finding that a state court judge had probable cause to issue a warrant where, *inter alia*, the judge questioned the informant face-to-face and made an independent assessment of reliability). Through the issuance of the search warrant, the judge must have determined that the confidential informant, in keeping with prior history, presented reliable information about conversations with Hayes, prior purchases from Hayes, the controlled purchases, and firearms that Hayes owned. Hayes has not presented enough information to override the judge's direct assessment of credibility and to raise sufficient doubts about the issuance of the search warrant. The Court thus recommends denying Hayes's motion to challenge the Niagara Falls City Court search warrant for Walnut Avenue. An analysis of good-faith reliance is not necessary.

        **H.**    *Motion to suppress evidence from search of 1318 Walnut Avenue, Upper, Niagara Falls, New York (dispositive)*

Having decided that the issuance of the search warrant was proper, the Court now must decide whether the execution of the search warrant also had been proper. "[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness." *Dalia v. U.S.*, 441 U.S. 238, 258 (1979) (citation omitted). "Government agents flagrantly disregard the terms of a warrant so that wholesale suppression is required only when (1) they effect a widespread seizure of items that were not within the scope of the warrant, and (2) do not act in good faith." *U.S. v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (internal quotation marks and citations omitted). On a lesser level, "when items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items, not invalidation of the entire search." *U.S. v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) (citations omitted).

Here, the execution of the search warrant occurred within the warrant's terms and without any constitutional defects. Police officers entered Walnut Avenue and secured everyone inside for officer safety. The Government acknowledges that this initial event constituted a seizure and perhaps an initial arrest, and nothing about it appears to have occurred improperly. The search then proceeded with different officers searching different rooms of the house. The process of searching the rooms unfolded within the scope of the search warrant's directive to find drugs and related paraphernalia. The discovery of the shotgun occurred while police officers were searching places that reasonably could have harbored drugs and related paraphernalia. "The plain-view exception then applies, since police had a lawful right of access to the location where they viewed evidence of a facially incriminating nature." *U.S. v. Hoover*, 152 F. Appx. 75, 76–77 (2d Cir. 2005) (citations omitted); *see also U.S. v. Byrd*, No. CR-86-56E, 1986 WL 11790, at *1 (W.D.N.Y. Oct. 16, 1986) (upholding the discovery of guns where "the guns were discovered in plain view during the carrying out of a search for drugs which had not to the point been uncoverered and are of a nature to be easily hidden in some [place] such as a ceiling rafter or a false ceiling"). Additionally, the discovery of the shotgun was consistent with the information from the confidential informant that Hayes either owned or controlled firearms at Walnut Avenue. Simone has asserted that the shotgun was hers, but her assertion does not change the probable cause that the police officers had at the time to attribute the shotgun to Hayes. Hayes can contest the actual ownership and control of the shotgun at trial as an affirmative defense, but the resolution of that potential affirmative defense later does not warrant suppression now. The Court thus recommends denying Hayes's motion to suppress the evidence found during the search of Walnut Avenue.

*I.     Motion to suppress statements (dispositive)*

Hayes included in his omnibus pretrial motions a preemptive argument about suppression of statements. At the hearing, the Government stipulated that Hayes made no statements during the course of events at Walnut Avenue on August 15, 2014. The Court accordingly recommends denying Hayes's motion to suppress statements as moot.

## IV.     CONCLUSION

The Court grants Hayes's non-dispositive motions in part and denies them in part as explained above. The Court respectfully recommends denying each of Hayes's motions to suppress for the reasons set forth above.

## V.     OBJECTIONS

A copy of this combined Decision and Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below. Any objections to the Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59. "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

                                            */s Hugh B. Scott*
                                            HONORABLE HUGH B. SCOTT
                                            UNITED STATES MAGISTRATE JUDGE

DATED: June 13, 2016